UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

ANTONIO J. WATKINS,

    Plaintiff,

-vs-                                                  Case No. 8:05-cv-1142-T-24MSS

TRINITY SERVICE GROUP INC.; MR. E.
SMITH FOOD SERVICE MANAGER,

    Defendants.
_____/

**ORDER**

       This cause is before the Court on Defendants' Motion for Summary Judgment (Doc. No. 44). Plaintiff Antonio J. Watkins did not file a Response.

**I.    Background**

       On or about June 20, 2005, Watkins filed a 42 U.S.C. § 1983 Complaint against Trinity Service Group, Inc. and Ernest Smith, as Trinity's Falkenburg Road Jail Unit Manager. Falkenburg Road Jail is located in Hillsborough County, Florida. (Doc. No. 1). Watkins asserts

that Defendants violated his First, Eighth, and Fourteenth Amendment rights and he seeks compensatory and punitive damages.   (Doc. No. 1, ¶ VI); (Doc. No. 1, ¶ VIII).

Trinity Service Group, Inc. is a privately-owned company contracted by the Hillsborough County Sheriff's Department ("HCSO") to provide food services to inmates at Falkenburg Road Jail.  (Doc. No. 45, ¶ 1); (Doc. No. 46, ¶ 1).

On July 19, 2005, the Court ordered the Marshal to serve the Defendants with forms the Plaintiff had completed.  In that order, the Court advised Plaintiff:

> 5.    Before counsel has appeared for Defendants, Plaintiff shall send to Defendants a copy of every further pleading, motion, or other paper submitted to be filed in this case and to be considered by the Court.  After counsel has appeared for Defendants, the copy shall be sent directly to counsel for Defendants, rather than to Defendants personally.  Plaintiff shall include with each pleading, motion, or other paper submitted to be filed a certificate stating the date that an accurate copy of the pleading, motion, or other paper was mailed to Defendants or counsel for Defendants.
>
> 6.    If any pleading, motion, or other paper submitted to be filed and considered by the Court does not include a certificate of service upon Defendants or counsel for Defendants, it will be stricken by the Court.
>
> 7.    Plaintiff shall immediately advise the Court of any change of address by filing a document entitled "Notice of Change of Address."  This notice shall contain only information pertaining to the address change and the effective date of such.  Plaintiff must file a separate notice in each case that he has pending before the Court.  Failure to inform the Court of an address change may result in the dismissal of this case, without further notice of the Court.  Plaintiff is reminded that he also must keep Defendants informed of his current address by sending Defendants a copy of the "Notice of Change of Address" in accordance with section 5 of this order.

On October 10, 2005, Watkins filed a Notice of Change of Address.  The address indicated that Watkins has been released from jail.  On March 14, 2006, Watkins filed three documents indicating that he was again in the Falkenburg Road Jail: a Supplement to his Complaint (Doc. No. 20);  a Motion to Access the Law Library (Doc. No. 21; and a Notice of Change of Address (Doc. No. 22).  The documents were stricken as they did not contain a

certificate of service. (Doc. No. 23). A copy of the order striking the documents was sent to Watkins at the jail, and the mail was not returned as undeliverable.

On March 16, 2006, counsel for Defendants filed a motion to dismiss. On March 20, 2006, the Court denied the motion to dismiss and ordered Defendants to provide Plaintiff with correct addresses for service. On March 22, 2006, Watkins filed a motion to access the law library at the jail. (Doc. No. 26). This motion indicated that Watkins remained in the Falkenburg Road Jail.

On June 19, 2006, after Defendants had been properly served, Defendants filed an answer and affirmative defenses. On June 28, 2006, the Court set discovery dates and ordered that all motions to dismiss or for summary judgment must be filed by September 28, 2006, and that Plaintiff must file his response to Defendants' motion to dismiss and/or for summary judgment not later than October 18, 2006.

Defendants filed their motion for summary judgment with affidavits on September 26, 2006. Defendants served a copy on Watkins at the Falkenburg Road Jail.[1] On September 27, 2006, the Court issued an order again instructing Plaintiff in the requirements of rule 56 and reminding Watkins that his response to the motion for summary judgment was due October 18, 2006. The order was sent to Watkins at 1814 N. 47th St. #9, Tampa, Florida 33605. The order was not returned as undeliverable.

Watkins did not respond and has not, as of this date, responded to Defendants' motion for summary judgment. On October 18, 2006, Defendants filed a Notice outlining their attempts to serve Watkins with a copy of the motion for summary judgment. Defendants stated that they attempted to serve Watkins at the Falkenburg Road Jail and at the 47th Street address.

---

[1] The Jail returned a copy of the order noting that Watkins had been released.

Pursuant to Defendant's Notice (Doc. No. 48), Defendants served the summary judgment motion by "leaving a copy with the clerk of the court." See Fed. R Civ. P. 5(b)(2)(C).

### Watkins' Allegations

Watkins alleges that on or about April 13, 2005, Defendants provided him one of his prescribed vegetarian meals. After Watkins began eating, he noticed worms or maggots in his food. Watkins took the tray to his supervisor. Watkins believes that a captain took pictures of the food tray containing maggots. Subsequently, Watkins submitted an Inmate Grievance Form against the jail kitchen.

On or about April 14, 2005, Watkins experienced diarrhea, vomiting, cramps, nausea, cold chills, and head aches. The Falkenburg Jail Medical Department treated Watkins for food poisoning. The Medical Department gave Watkins immodium, administered a shot of pheneroan, and prescribed medication for three days.

Watkins further asserts that he filed numerous grievances to which Defendants did not respond. Finally, Watkins alleges that there are meat products in the vegetarian meals, and that it is against his religion to eat meat.

### Defendants' Allegations

Defendants assert that Trinity prepares approximately 8,100 meals per day. (Doc. No. 46, ¶ 7). Approximately 150 of those meals are religious and/or medical diet meals. The Hillsborough County Sheriff's Office (HCSO) establishes the general specifications for the menus and requires Trinity to substitute certain food items for inmates on medical and/or religious diets. (Doc. No. 46, ¶ 3). During Watkins' incarceration, Trinity prepared meals for him in accordance with an Ovo-Lacto Vegetarian diet prescribed by the HCSO. (Doc. No. 46, ¶ 4). The vegetarian diet included dairy products, but replaced meat items with cheese, peanut

4

butter, beans or legumes. Trinity is permitted to deviate from the diet only to the extent authorized by the HCSO. (Doc. No. 46, ¶ 5).

Defendants state that they are unaware of any incident involving food contamination by maggots at the Falkenburg Jail. (Doc. No. 46, ¶ 17); (Doc. No. 45, ¶ 7). After an inspection of the files, Trinity investigators did not uncover any photographs of the meal allegedly containing maggots, and could not find any reports concerning the incident. (Doc. No. 46, ¶ 16); (Doc. No. 45, ¶ 6). Defendants knew only about Watkins' Inmate Grievance Form.

Smith reviewed the grievance files and investigated Watkins' allegations concerning the incident. (Doc. No. 45, ¶ 7). Smith determined that Watkins' allegations were unfounded. Watkins appealed Smith's response. The Falkenburg facility commander reviewed and upheld Smith's decision.

## II.     Standard of Review

Federal Rule of Civil Procedure 56(c) states that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P 56(c). The evidence is viewed in the light most favorable to the non-moving party. *Miller v. King*, 384 F.3d 1248, 1258-59 (11th Cir. 2004); *Barfield v. Brierton*, 883 F.2d 923, 933-34 (11th Cir. 1989). The Court does not decide issues of material fact, but determines whether such issues exist to be tried. *Anderson v. Liberty Lobby,* 477 U.S. 242, 249 (1986). Genuine disputes are those in which the evidence is such that a reasonable jury could return a verdict for the non-moving party. *Id.* at *248*.

The movant bears the initial burden of identifying the absence of any genuine issue of material fact, but need not disprove matters on which the non-moving party bears the burden of

proof at trial. *Cox v. Adm'r U.S. Steel & Carnegie*, 17 F.3d 1386, 1395 (11th Cir. 1994). Once the movant carries its burden, the non-moving party must demonstrate that a genuine issue of material fact remains in dispute to avoid summary judgment. *Id*.

In the present case, no genuine issues of material fact remain in dispute and Defendants are entitled to summary judgment as a matter of law.

### III.   Discussion

Defendants argue that they are entitled to summary judgment because (1) Watkins' request for money damages is expressly barred by the Prison Litigation Reform Act ("PLRA"); (2) Watkins' claim is improperly based on a theory of *respondeat superior*; (3) Watkins' rights under the First Amendment were not violated; (4) Watkins' claim does not satisfy either the objective or subjective tests for an Eight Amendment claim; (5) Watkins' allegations do not give rise to a Fourteenth Amendment claim; (6) there is no basis for an award of punitive damages against the Defendants, and (7) the Defendants are entitled to qualified immunity.

### A.   The Prison Litigation Reform Act Bars Watkins' Claim for Compensatory Damages.

"No Federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). To prevail under § 1997e(e), the prisoner must allege physical injuries that are not *de minimis*. *Mitchell v. Brown & Williamson Tobacco Corp.*, 294 F.3d 1309, 1312-13 (11th Cir. 2002); *see also Harris v. Garner*, 190 F.3d 1279, 1286 (11th Cir. 1999), *vacated*, 197 F.3d 1059, *reinstated in relevant part*, 216 F.3d 970, 972 (11th Cir. 2000)(en banc).

Watkins' alleged physical injuries are *de minimis*. Watkins avers that he experienced diarrhea, vomiting, cramps, nausea, and head aches from eating spoiled food on or about April

13, 2005. (Doc. No. 1, ¶ VII). Watkins also claims that Falkenburg Jail medical personnel treated him for food poisoning and placed him on medication for three days. Watkins experienced the unpleasant conditions only for a short time after eating the spoiled food. *Id*. Therefore, his alleged physical injuries are *de minimis*. *Alexander v. Tippah County*, *Miss*., 351 F.3d 626, 631 (holding that while vomiting and nausea are unpleasant, they are *de minimis* physical injuries); *Harris*, 190 F.3d at 1287 (forced shave was *de minimis* even though the shaving caused bleeding, inflammation, irritation, ingrowing of hairs, infection, purulence and pain)(quoting *Shabazz v. Barnauskas*, 790 F.2d 1536, 1538 (11th Cir. 1986)); *Siglar v. Hightower,* 112 F.3d 191, 193 (holding that a bruised and sore ear lasting three days is a *de minimis* injury).

Moreover, the physical harm described by Watkins is *de minimis* because the injuries would not require a free world person to visit an emergency room, have a doctor attend to, give an opinion on, diagnosis, or prescribe medical treatment for the injury. *Luong v. Hatt,* 979 F.Supp. 481, 486 (N.D. Tex. 1997) (holding that "people, in the regular and ordinary events and activities in their daily lives, do not seek medical care for the injuries they receive unless they obviously appear to be of a serious nature, or persist after home remedy care"). Watkins' claim does not support a compensatory damages award. *Mitchell*, 294 F.3d at 1312-13.

### B.     Punitive Damages are Not Appropriate.

Punitive damages are only appropriate under § 1983 where the Defendants' conduct is motivated by evil intent, or where the conduct involves reckless indifference to the rights of others. *Smith v. Wade*, 461 U.S. 30, 56 (1983). Here, Watkins makes no showing that Defendants' alleged wrongdoing was motivated by evil intent. Similarly, Watkins did not allege sufficient facts to show that Defendants' actions involved reckless indifference to Watkins'

rights. To the contrary, the facts show that Defendants attempted to accommodate prisoners by serving religious diets and nutritious meals. Therefore, Watkins is not entitled to punitive damages.

### C. Watkins Cannot Maintain a Claim Under 42 U.S.C. § 1983.

Pursuant to 42 U.S.C. § 1983, Watkins asserts several claims under the First, Eighth, and Fourteenth Amendments. Any claim under § 1983 consists of two elements: (1) whether a person acting under the color of state law committed the conduct complained of; and (2) whether such conduct deprived Watkins of a right, privilege, or immunity secured by the Constitution or laws of the United States. *Paratt v. Taylor*, 451 U.S. 527, 527 (1981), *overruled in part on other grounds by Daniels v. Williams*, 373 U.S. 327 (1986). Watkins fails to meet the second element of § 1983 because: (1) the theory of respondeat superior is not a valid basis for liability under § 1983, and (2) Defendants did not deprive Watkins of any right, privilege, or immunity.

#### 1. Trinity is Not Liable Under § 1983 Based on Respondeat Superior.

If state action is established, a private actor can be liable under § 1983. *Howell v. Evans,* 922 F.2d 712, 724 (11th Cir. 1991)(quoting *Lugar v. Edmondson Oil Co.*, 457 U.S. 922 (1982)). However, to establish liability, Watkins must show causation. *Id*. To state a valid claim against Trinity under § 1983, Watkins must show that Trinity's corporate custom, policy, or practice was the "moving force" behind the alleged constitutional deprivation. *Hatten v. Prison Health Services,* 2006 U.S. Dist. Lexis 65143 *14-15 (M.D. Fla. Sept. 13, 2006) (Steele, J.). Watkins cannot meet this standard.

Watkins alleges that the vegetarian meals were inconsistent with the tenets of his religion, and that serving the meals violated his constitutional rights. However, the facts confirm that Trinity did not have any authority to prescribe religious diets. (Doc. No. 46, ¶ 5).

8

Specifically, the HSCO, not Trinity, is responsible for establishing the general specifications of the menu and substituting various items to accommodate religious diets. (Doc. No. 46, ¶ 3). Since Trinity lacks authority to alter the menu, Watkins cannot demonstrate that Trinity's custom, policy, or practice was the moving force behind the alleged violation.

Watkins cannot carry this burden concerning the alleged maggot incident either. Watkins did not demonstrate that Trinity's custom, policy, or practice caused the alleged contamination of his meal. In addition, Watkins did not show that Defendants failed to take reasonable steps to prevent such contamination.

### 2.   Smith is Not Liable Under § 1983 Based on Respondeat Superior.

"It is well established in this Circuit that supervisory officials are not liable under § 1983 for the unconstitutional acts of their subordinates on the basis of respondeat superior or vicarious liability." *Cottone* v. Jenne, 326 F.3d 1352, 1360 (11th Cir. 2003)(quoting *Hartley v. Parnell*, 193 F.3d 1263, 1269 (11th Cir.1999)). Rather, supervisory liability occurs only when the supervisor personally participates in the alleged misconduct or when there is a causal connection between supervising official's actions and the alleged constitutional deprivation. *Id*.

Watkins cannot meet his burden with respect to holding Smith liable under § 1983 on the basis of respondeat superior or vicarious liability. Smith had no involvement in prescribing inmate diets, designing menus, or establishing meal schedules. (Doc. No. 45, ¶ 3). Further, Smith is unaware of any incident involving contamination of a meal by maggots, and did not receive complaints from any other inmate. (Doc. No. 45, ¶ 7). Therefore, Smith is not liable under § 1983 as he did not participate in the alleged misconduct and did not intentionally and knowingly ignore such misconduct. *Dilliard v. Washington*, 1997 WL 305312 at *2 (N.D. Ill.

1997) (Korcoras, D.J.) (granting summary judgment for prison officials because none of the Defendants had personal responsibility for the denial of his vegetarian meal).

      **D.**      **Watkins' First Amendment Rights Were Not Violated.**

"It would be a strange result indeed to conclude that a program designed to facilitate the accommodation of a prisoner's religious dietary needs actually violates the inmate's First Amendment rights." *Resnick v. Adams*, 348 F.3d 763 (9th Cir. 2003). The Free Exercise Clause of the First Amendment grants prisoners a limited right to receive a religious diet meal. *Harris v. Ostrout*, 65 F.3d 912, 918 (11th Cir. 1995)(citing *Martinelli v. Dugger,* 817 F.2d 1499, 1505-06 (11th Cir.1987)). However, the administration at the Falkenburg Road Jail may curtail this free exercise right, if the purpose of doing so is to achieve legitimate correctional goals. *Ward v. Walsh*, 1 F.3d 873, 876 (9th Cir. 1987)(citing *O'lone v. Shabazz*, 482 U.S. 342, 348 (1987)).

Watkins asserts that it is against his religion to eat meat, and that the vegetarian meal contains meat products. (Doc. No. 1, ¶ VII). In light of Watkins' religious interest, the administration at the Falkenburg Road Jail has a legitimate correctional goal of efficiently managing its food service operations in an orderly way. Trinity prepares approximately 8,100 meals per day. (Doc. No. 46, ¶ 7). Approximately 150 of those meals are religious and/or medical diet meals. Trinity substitutes certain food items for inmates on medical and/or religious diets. (Doc. No. 46, ¶ 3). During Watkins' incarceration, Trinity prepared meals for him in accordance with an Ovo-Lacto Vegetarian diet prescribed for him by the HCSO. (Doc. No. 46, ¶ 4). The Vegetarian diet included dairy products, but replaced meat items with cheese, peanut butter, beans or legumes. *Id.* Since the menu for the vegetarian meal did not contain meat, Watkins' First Amendment right was not violated.

Even if Watkins occasionally received meals that did not comport with his religious tenets, his First Amendment rights were not violated. Watkins does not allege that he experienced a continuous violation of his First Amendment rights because of the contents of the vegetarian diet meals. Therefore, any harm done to Watkins is *de minimis*. *See Rapier v. Harris*, 172 F.3d 999, 1006 (7th Cir. 1999) (infrequent unavailability of a non-pork tray did not constitute more than a *de minimis* burden of plaintiff's free exercise of religion).

### E.     Watkins' Eighth Amendment Rights Were Not Violated.

Courts apply a two-part test in determining whether a prison official violated a prisoner's Eighth Amendment rights. *Farmer v. Brennan* 511 U.S. 825, 834 (1994). Specifically, Watkins must show that: (1) the deprivation is objectively "sufficiently serious," and (2) the prison official's deliberate indifference caused such deprivation. *Id*.

#### 1. Watkins' Alleged Deprivation Was Not Objectively, Sufficiently Serious.

Watkins asserts that the alleged food poisoning and maggot incident violated his Eighth Amendment rights. To prevail on this claim, Watkins must show that these conditions "posed and unreasonable risk of serious damage to his future health." *See Chandler v. Crosby*, 379 F.3d 1278, 1289 (11th Cir. 2004). Watkins cannot meet his burden of objectively proving that the food poisoning and maggot incident amounted to a sufficiently serious situation that posed an unreasonable risk of serious damage to his future health. Watkins proffers no evidence that would even suggest a risk to his future health.

Further, isolated incidents are not serious enough to constitute a violation of the Eighth Amendment. *Islam v. Jackson*, 782 F.Supp. 1111, 1114 (E.D. Va. 1992) (holding an isolated two week period of food contamination, including food infested with maggots, not sufficiently serious); *George v. King*, 837 F.2d 705, 707 (5th Cir. 1988) (holding that a single incident of

11

prisoner food poisoning is not a constitutional violation).  Since Watkins' alleged food poisoning and maggot incident were independent and isolated events, they were not sufficiently serious deprivations to violate his constitutional rights.

### 2.  Defendants Did Not Act With Deliberate Indifference.

To show that Defendants were acting with deliberate indifference requires a showing that Defendants knew of, and disregarded, an excessive risk to the prisoner's health or safety. *Farmer*, 511 U.S. at 837; *see also Lamarca v. Turner*, 995 F.2d 1526, 1536 (11th Cir. 1993) (to demonstrate an official's deliberate indifference, Watkins must prove that the official possessed knowledge of the condition and the means to cure that condition).

Watkins asserts that the Defendants acted with deliberate indifference after learning about the alleged food contamination incidents.  (Doc. No. 1, ¶ VI).  However, the affidavits of Defendants demonstrate that they are unaware of any incident involving food contamination by maggots at the Falkenburg Road Jail.  (Doc. No. 46, ¶ 17); (Doc. No. 45, ¶ 7).  Moreover, after an inspection conducted shortly after Watkins initiated this action, investigators did not uncover any photographs of the meal allegedly containing maggots and could not find any reports concerning such incident.  (Doc. No. 46, ¶ 16); (Doc. No. 45, ¶ 6).  Defendants only knew about Watkins' Inmate Grievance Form complaining about the incident.  Smith reviewed the grievance files and investigated Watkins' allegations concerning the incident.  (Doc. No. 45, ¶ 7).  Smith determined that Watkins' allegations were unfounded.  Watkins appealed Smith's response. The Falkenburg facility commander reviewed and upheld Smith's decision.  Therefore, Defendants were not aware of any excessive risk to Watkins' health and did not disregard such risk.

F.     **Watkins' Fourteenth Amendment Rights Were Not Violated**.

Watkins cannot base his Fourteenth Amendment claim on a violation of his First and/or Eighth Amendment rights because any harm Defendants caused Watkins was *de minimis*, and Defendants did not act with deliberate indifference.

To the extent that Watkins' Fourteenth Amendment claim is based on Defendants' alleged failure to properly respond to Watkins' food-related grievances, Watkins cannot prevail. A prison grievance system does not give rise to a protected liberty interest requiring the procedural protections of the Fourteenth Amendment. *Crenshaw v. Lister,* 2005 WL 1027326 at *3 (M.D. Fla. Mar. 29, 2005)(Steele, J.)(citing *Buckley v. Barlow*, 997 F.2d 494 (8th Cir. 1993)). Even assuming that the Defendants did not properly respond to Watkins' grievance, Watkins cannot seek redress under the Fourteenth Amendment. *Id.* (holding that a prison official's failure to process a prisoner's grievances does not give rise to a due process violation).

G.     **Defendants are Entitled to Qualified Immunity**

"Government officials performing discretionary functions are generally shielded from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald,* 457 U.S. 800, 818 (1982). In analyzing the Defendants' entitlement to qualified immunity, the Court must determine whether the facts alleged show the officer's conduct violated a constitutional right. *Saucier v. Katz*, 533 U.S. 194, 201 (2000). Secondly, the Court must analyze whether the right was clearly established so that a reasonable officer would know that his conduct was unlawful. *Id.* Corporations are also entitled to qualified immunity. *Hartman v. Corr. Med. Srvs., Inc.,* 960 F.Supp. 1577, 1582-83 (M.D. Fla. 1996) (corporations are also

entitled to raise qualified immunity as a defense to liability). Watkins has not refuted that Defendants are entitled to qualified immunity in this case.

Accordingly, the Court orders:

That Defendants' motion for summary judgment (Doc. No. 44) is granted. The Clerk is directed to enter judgment against Watkins and to close this case.

ORDERED at Tampa, Florida, on November 27, 2006.

SUSAN C. BUCKLEW
United States District Judge

Counsel of Record

Antonio J. Watkins